**Carlos BISHOP, Plaintiff,**

v.

**ASHLAND OIL, INC., Defendant.**

**Civ. A. No. 74–1135.**

United States District Court,
W. D. Pennsylvania.

May 29, 1975.

Harry Alan Sherman, Pittsburgh, Pa., for plaintiff.

Theodore O. Struk, Pittsburgh Pa., for defendant.

OPINION AND ORDER

MARSH, District Judge.

Plaintiff, a seaman marine engineer, brought this action under the Jones Act, 46 U.S.C. § 688, and the general maritime laws to recover damages for personal injuries and maintenance and cure.

He alleges his injuries were caused on June 14, 1974 by the negligent operation of the M/V Tri-State and its unseaworthiness when the barges in tow ran into a canal wall or bank and threw him against a metal tank. He alleges he sustained permanent disability (Paragraph 5 of the Complaint). The defendant filed an answer denying all the averments in the complaint and setting out 11 defenses.

Following answers to interrogatories served on plaintiff, the defendant, on March 12, 1975, pursuant to 28 U.S.C. § 1404(a), moved for change of venue from this district to the Eastern District of Kentucky sitting at Catlettsburg, Kentucky, or alternatively to the Southern District of West Virginia sitting at Huntington, West Virginia. The motion will be granted and the case transferred to the Eastern District of Kentucky.

Section 1404(a) provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In its motion for change of venue, the defendant filed numerous affidavits and the plaintiff filed two. It appears that the alleged accident occurred in a Texas intercoastal canal; that defendant owned the M/V Tri-State on June 14, 1974; that there were ten members of the crew including the plaintiff; that the home port of the Tri-State is Louisville, Kentucky; that plaintiff resides in Wheelersburg, Ohio; that defendant is a Kentucky corporation having its principal place of business in Ashland, Kentucky, a port on the Ohio River.

Of the nine listed crew members, three live in Ashland; two live in other places in Kentucky; and the remaining four live in states other than Kentucky; all members of the crew including the plaintiff reside in places considerably closer to Catlettsburg than to Pittsburgh.

An affidavit filed by Robert L. Gray, which has not been contradicted by the affidavits filed by the Plaintiff, avers that Wheelersburg, the plaintiff's residence, is 30 miles to Catlettsburg and 305 miles to Pittsburgh.

The defendant's principal place of business is averred to be in Ashland Kentucky; the Gray affidavit states that Ashland is 6 miles to Catlettsburg and 315 miles to Pittsburgh.

It further appears by other affidavits submitted by the defendant that the plaintiff was confined to the Kings Daughter Hospital in Ashland from August 4 to August 14, 1974; that x-rays were taken; that he was seen by Dr. Hollis, Dr. Cawood, Dr. Roland and Dr. Roth, all of whom live in Ashland. He was also seen by Dr. Lobo of Huntington, West Virginia, and Dr. Secrest and Dr. Kostoff of Columbus, Ohio. Huntington is 12 miles to Catlettsburg and 300 miles to Pittsburgh according to Gray's affidavit, and Columbus, Ohio is 140 miles to Catlettsburg and 195 miles to Pittsburgh. Thus, the medical records and residences of five examining and treating physicians are located in close proximity to Catlettsburg. The plaintiff's two doctors in Columbus, Ohio treated plaintiff subsequent to his treatment and hospitalization in Ashland. Plaintiff brought Workmen's Compensation proceedings in Columbus, Ohio.

It appears that Dr. Lobo, in Huntington, West Virginia, and the four doctors in Ashland, Kentucky, or some of them, will be necessary witnesses and certainly are potential witnesses having treated and examined plaintiff from June until October, 1974.

From the affidavits submitted by the defendant it appears that most, if not all nine members of the crew, are potential witnesses for the defendant. Although no one saw plaintiff allegedly being thrown against a metal tank, it appears that plaintiff talked to some of the crew members and stated matters concerning the accident and a prior injury to his back, which could be used to impeach him. The pilot, L. C. Scholten, has no

recollection that the vessel ran aground and anyone aboard was injured. Other crew members seem to be unaware that the tow of the vessel ran aground or hit the bank of the canal, and those who were, minimize the force of the occurrence. Vincent K. Davis, an engineer who boarded the vessel after the alleged accident, discussed with the plaintiff a prior motor vehicle accident in which the plaintiff was involved and received back injuries. Davis also observed plaintiff's capacity to work following the alleged accident on the vessel. Davis resides in Augusta, Kentucky, 115 miles from Catlettsburg and 335 miles from Pittsburgh according to Gray's affidavit.

The defendant expects the chief relief engineer, Norvell Grant, to testify that plaintiff minimized the injury to his back, and refused to get off the vessel at Baton Rouge, Louisiana to see a doctor even though Mr. Grant offered to work in his place for the remainder of the voyage. Mr. Grant, also one of the crew members, is expected to testify that the force of running aground was so slight that it failed to wake him up.

The crew members and the doctors would not be subject to compulsory process in Pittsburgh, whereas four crew members and five of the seven doctors would be subject to compulsory process in Catlettsburg.

The M/V Tri-State much more frequently plies the waters in and about Ashland than Pittsburgh. See the affidavit of Zane G. Meek.

It seems obvious that the expense of a trial in Pittsburgh would be considerably more than the expense of a trial in Catlettsburg, although defendant has failed to estimate the costs of maintenance and transportation for its crew and medical witnesses if the trial were held in Pittsburgh as compared to such costs in Catlettsburg.

Moreover, if the members of the crew, or some of them, are still working on the river for the defendant, it would seem likely that even those who reside beyond 100 miles of Catlettsburg may be subject to service of process or may be assigned to the M/V Tri-State by the defendant while in dock at Ashland during the trial.

The plaintiff filed an affidavit that the vessel and her tow "hit hard against the bank or canal wall" throwing him against a metal tank injuring his back. He avers he mentioned his accident only to Captain Glasscock and John Daulton, but on the contrary, crew members Davis and Grant state affirmatively that plaintiff discussed his back injuries with each of them, and crew member Charles H. English, who lives in Ashland, states that plaintiff told him he reinjured his back while lifting something in the engine room.

Plaintiff states that he lives at Wheelersburg, Ohio with his wife, and although permanently disabled, is presently working for the Second Marine Corp., Cincinnati, Ohio, on the M/V White Gold, navigating the Ohio River between Cairo, Illinois and Pittsburgh. In our opinion, this employment does not create a nexus with this district offsetting the factors favoring a transfer.

A hearing was held at which counsel for each party presented arguments pro and con. No testimony was offered. Briefs were submitted by each party. Neither party ordered a transcript of the argument.

■■ The plaintiff's choice of forum is a paramount consideration in any determination of a transfer request, and his choice should not be lightly disturbed. Shutte v. Armco Steel Corporation, 431 F.2d 22 (3rd Cir. 1970). In All States Freight v. Modarelli, 196 F.2d 1010, 1011 (3rd Cir. 1952) it is stated:

> "the statute limits the privilege of the plaintiff to have his lawsuit tried in the forum of his choosing . . .. The purpose of the limitation is clearly to make the inevitably uncomfortable (for the litigant) judicial process cheaper and more convenient and, if possible, more prompt."

In our opinion, the balance of convenience to each party and their potential

witnesses and the interests of justice, weigh heavily in favor of the transfer from this district to the Eastern District of Kentucky. On the other hand, the factors taken into consideration disclose that this lawsuit has no significant relationship whatsoever with the Western District of Pennsylvania. *Cf.* Knight v. United States Line, Inc., 333 F.Supp. 827 (E.D.Pa.1971); Detrick v. Baltimore and Ohio Railroad Company, 330 F.Supp. 257 (E.D.Pa.1971); Fitzgerald v. Central Gulf Steamship Corp., 292 F.Supp. 847 (E.D.Pa.1968); Forester v. Elk Towing Co., 242 F.Supp. 549 (W.D.Pa.1965); Wilson v. Ohio River Company, 211 F.Supp. 666 (W.D.Pa. 1962).

There is no dispute that the action might have been brought in the Eastern District of Kentucky. The defendant is a Kentucky corporation and has its principal place of business in that district. There does not appear to be any administrative problems resulting from congestion in that district.

An appropriate order will be entered.[1]

1. In our opinion, plaintiff's motions pursuant to Rule 34 and Rule 37(a)2 and defendant's Motion for Leave to File Amended Answers to Interrogatories should be resolved by the transferee court.